(37 South. 858.)

No. 15,340.

GREEN v. FARMERS' CONSOLIDATED DAIRY CO., Limited.

(Jan. 16, 1905.)

CONTRACT—BREACH—DAMAGES.

1. When a contract is violated, though not in bad faith, and though the proof fails to establish the extent, in money, of the damages thereby sustained, nominal, compensatory damages may be allowed for the technical injury, and, a fortiori, may they be allowed when the breach of contract is shown to have been committed in bad faith and from motives of interest.

(Syllabus by the Court.)

Action by J. C. Green against the Farmers' Consolidated Dairy Company, Limited. Judgment for plaintiff was affirmed by the Court of Appeal, and defendant brings certiorari or writ of review. Reversed.

Cage, Baldwin & Crabites and Robert Lee Tullis, for applicant Albert Fabacher, receiver. C. A. Schreiber, Gabriel Fernandez, and Sentell & Harvard, for respondent.

Statement of the Case.

MONROE, J. Plaintiff sued for $192.82 for milk alleged to have been sold and delivered to the defendant under a contract dated April 29, 1902, and running to April 1, 1903. Defendant admits that milk to the value claimed was delivered under the contract in July, 1902, but denies liability therefor (save as otherwise admitted), and claims in reconvention, from the plaintiff, the sum of $1,680, alleging, in substance, as follows: That, under the contract sued on, plaintiff was bound to deliver not less than 40 gallons of milk a day at 15 cents a gallon during the spring and summer, and at 17 cents a gallon during the fall and winter, but that about August 1, 1902, he stopped furnishing milk, and was notified that defendant would buy elsewhere, and charge him with the difference in price, which defendant did, and thereafter offered plaintiff $144.75, being the amount of his bill for milk furnished in July, but that plaintiff refused to receive said amount. Defendant further alleges that plaintiff refused to furnish milk according to his contract after August, 1902, and that it (defendant) had sustained, and was sustaining, loss thereby at the rate of $8 per day, and it prayed for judgment for $1,680 as the aggregate amount of its loss up to the date of the filing of the demand (December 10, 1902), and to be sustained to March 31, 1903. While the suit was pending, the plaintiff died, and his executrix was made a party, and the defendant went into the hands of a receiver, who was made party defendant.

The evidence shows that about the 10th of July the plaintiff agreed to sell to William Laferriere, at 16, and 17½, or 18 cents, the milk which he had contracted to deliver to the defendant at 15 and 17 cents, and that he thereafter made the alleged failure of the defendant to pay according to contract a pretext for refusing to deliver milk under that contract. In point of fact there was no such failure. The contract called for payments between the 15th and 20th of the month (for milk delivered during the previous month), and the check for the June milk was drawn on Sunday, July 20th, and mailed either that evening or the next morning to the plaintiff, whose dairy was at Hammond, on the railroad, above the city of New Orleans, and this appears to have been according to the custom of the parties. From all the testimony in the case, we are inclined to the opinion that the milk which the plaintiff failed to deliver might have been replaced at an advanced price, but at how great an advance we are unable to say. Certain it is, however, that the defendant was subjected to inconvenience, annoyance, and loss, and that the plaintiff, in repudiating his contract, acted without legal justification, in bad faith, and from motives of interest.

The district court gave judgment for plaintiff as prayed for, and rejected the reconven-

tional demand of the defendant, on the ground that the evidence was insufficient to establish the claim for damages, and that it was the duty of the defendant to have minimized the damages by buying milk at an advanced price, and the judgment so rendered was affirmed by the Court of Appeal.

## Opinion.

The proposition which the applicant submits to this court is that, whilst the quantum of damages claimed has not been proved, nevertheless, as it appears that the plaintiff violated his contract and subjected defendant to inconvenience and annoyance, compensatory damages, in at least a nominal amount, should be awarded. This proposition is well founded in law, and is supported by the jurisprudence of this court.

In Judice v. So. Pac. Co., 47 La. Ann. 257, 16 South. 816, it was said:

"While the article of the Code says, in contracts other than those for the payment of money, the damages will be such as were contemplated by the parties, when there is no bad faith, this does not require the plaintiff, in order to obtain judgment for the violation of his contract, to prove actual, pecuniary damages. If inconvenience to the plaintiff and loss of time have been proved, and there has been no inquiry as to actual damages, or none appears on inquiry, there is still some practical expression, as to technical injury, required of the court for compensatory damages. In default of proof of actual damages, damage by implication remains for the technical violation of the contract, when facts have been shown which would authorize the assessment of an appreciable amount in damages, if proved. In such cases the amount is inappreciable, and is given to save costs to the plaintiff."

In Bourdette v. Sieward, 107 La. 264, 31 South. 630, it was said:

"We have held that the violation by one person of the legal rights of another renders the latter [former] liable for at least nominal damages, without proof of actual damages. [Citing] Dudley v. Tilton, 14 La. Ann. 283; Powers v. Florance, 7 La. Ann. 524; Bourdette v. Sieward, 52 La. Ann. 1333, 27 South. 724."

In both of the cases cited it was held that the defendant had been guilty of no bad faith. In the case at bar we have found that the defendant (in reconvention) violated or repudiated his contract in bad faith and from motives of interest, so that punitory damages might have been awarded against him had they been demanded. In the Judice Case, nominal damages were awarded in the sum of $3, and in the Bourdette Case in the sum of $500. In the instant case we fix the sum at $50. It is therefore ordered, adjudged, and decreed that the judgments of the district court and Court of Appeal herein rendered, in so far as they reject the reconventional demand of the defendant, be annulled, avoided, and reversed, and that there now be judgment in favor of the defendant, and against the plaintiff, on said demand, in the sum of $50. It is further adjudged and decreed that said judgments, in so far as they condemn the defendant to pay all costs, be annulled, and that defendant be now condemned to pay the costs of the district court on the main demand, and the plaintiff to pay the costs of said court on the reconventional demand. It is further adjudged and decreed that the plaintiff pay the costs of the appeal and of this application.