## No. 10,864.

### MOSES A. BONIEL VS. HENRY BLOCK.

1. A house owner who has served the notice provided by Act 96 of 1888, and has followed it by ejectment proceedings provided therein, thereby acknowledges that the party so proceeded against and occupying his house is a tenant, and is estopped from subsequently denying it.

2. Where a landlord, instead of resorting to the means provided by law, takes upon himself, without authority, to remove the property of his tenant and to turn him out, he will be liable in damages, though the ejectment was effected, without personal violence, in the tenant's absence.

3. It is no defence that the business conducted by the tenant was illegal or that the latter was claimed to be in default in payment of his rent. The law provides remedies for such wrongs and does not sanction private redress.

APPEAL from the Civil District Court for the Parish of Orleans. *Righter, J.*

*Gus. A. Breaux* and *Henry L. Lazarus* for Plaintiff and Appellee.

*Moise & Titche* for Defendant and Appellant:

The *existence* or *scope* of one's authority to act as agent for another can not be proved by the declarations or admissions of the alleged agent. Abbott's Trial Evidence, p. 43.

The connection between the parties, which renders the declaration of one competent against the other, can never be proved by the declaration itself, but must be separately proved as the foundation for admitting the declaration. Abbott's Trial Evidence, p. 191; Ewell's Evans on Agency, p. 156, p. 16 n.

Defendant in an action of damages for unlawful interference with plaintiff's business may prove that the business was in violation of city ordinances and had been declared unlawful by our Supreme Court, for if not a justification the evidence would be in mitigation of damages.

Boniel vs. Block.

The testimony of any witness, whether a resident or not of the parish where the court sits, may be taken pursuant to the provisions of Act No. 84 of 1868.

A "notice to vacate" given by the owner of the house to one in possession does not estop the owner from showing that he had not consented to the occupancy: the "breach of the lease" may be failure to pay rent before occupancy. Act 96 of 1888.

The opinion of the court was delivered by

FENNER, J. The allegations which constitute the cause of action may be briefly stated as follows:

1. That plaintiff had rented a house from the defendant and occupied the same as a tenant, and was conducting a grocery business therein with a stock of groceries.

2. That one Edwards, acting under the authority and direction of the defendant, forcibly entered the house in his absence, removed his goods and took possession of the premises.

3. That said acts were illegal and occasioned him damage, for which the defendant is responsible.

The defence is a general denial.

The case was tried before a jury and resulted in a verdict and judgment for $1500, from which the defendant appeals.

It can not be denied that the petition sets forth a good cause of action, if the allegations are proved.

1. The defendant is conclusively estopped from denying that plaintiff occupied the house under a contract of lease from him by the following notice signed by himself and served on plaintiff:

"NEW ORLEANS, April 12, 1889.

"Mr. Boniel—You are hereby notified to vacate the property now occupied by you at the corner of Monroe and Newton streets for failing to comply with the verbal lease entered into by you. This notice is in conformity with Act 96 of 1888."

This notice was followed by a suit brought under the act referred to, which was a judicial admission of the relation of landlord and tenant under the very terms of the act.

2. It is proved to our entire satisfaction that Edwards, claiming to act by defendant's authority, had gone to Boniel and demanded the key and possession of the property, which Boniel refused; that Edwards then told him that he intended to take possession, and that Boniel warned him that, if he did, he and Mr. Block would be held responsible; that Edwards then went to a locksmith and had a key

so filed as to fit the lock of the house; that, subsequently, in plaintiff's absence, leaving the house locked up, Edwards returned, unlocked the door with a false key, entered, removed the plaintiff's counter and goods, and took possession. When plaintiff returned and found what had been done he caused Edwards to be arrested for trespass. When plaintiff resumed possession of the premises he was called upon by one Levy, an employee of defendant, who was sent by the latter again to demand the keys, and the interview resulted in an altercation in which plaintiff was knocked down and severely beaten. After this he concluded to abandon the premises and rented and moved into another house. It is not pretended that defendant is responsible for this assault, and it is unnecessary to determine who was in fault. It was only admitted and is referred to to explain plaintiff's final abandonment.

3. The evidence is, to our minds, equally clear that in all that he did, Edwards acted under the authority and direction of defendant. Edwards' statements to that effect, in connection with his acts themselves, though properly admitted as part of the *res gestæ*, to prove *rem ipsam*, would not operate as proof of authority when made out of defendant's presence; but there is other testimony of statements by Edwards in the presence of defendant, and of defendant's own statements, to sustain the authority, particularly in view of the significant fact that the defendant, though testifying as a witness, does not even intimate a denial of Edwards' authority.

The foregoing findings are sufficient to sustain the action of plaintiff.

It is no defence to say that the business conducted by plaintiff was illegal, being the kind of business described in State vs Boniel, 42 An. 1110. Defendant was not charged with any function as an officer of the law, and if, as a citizen, he desired to vindicate the law, the course pointed out was entirely different from that here pursued.

Neither is the charge that Boniel had not complied with the terms of his lease of any avail. There was a dispute as to whether Boniel was bound, under his lease, to pay his rent in advance. Even if he were so bound and had failed to comply, defendant's remedy was at law and not by such proceedings as those here taken.

Counsel for defendant has quoted some common law authorities which are no doubt of great weight in the cases to which they apply;

but, so far as this case is concerned, we prefer to rest it upon the memorable case of Thayer vs. Littlejohn, decided by this court, 1 Rob. 140, in which the doctrine, ever since followed by this court, was laid down that "·where a landlord, instead of resorting to the means provided by law for obtaining payment of his rent and possession of his premises, takes upon himself, without authority, to remove the property and turn out the family of his tenant, he will be liable in damages, and it will be no excuse that such removal was effected without violence or injury."

See also Van Wren vs. Flynn, 34 An. 1158. .

We have observed the stress laid by counsel upon his numerous bills of exception to the admission and rejection of evidence, and have considered them all carefully.

We need not review them. Several of them are disposed of by our ruling that defendant was estopped from denying the fact of a lease. Others are eliminated by other views above expressed.

The only one sufficiently important to require special notice is that excluding the evidence of Edwards, taken by defendant's counsel at his office and out of the presence of opposite counsel, but in alleged compliance with Act 84 of 1868.

Mere reference to that act will show that the testimony was not taken in compliance with the requirements of that act, and that it would be inadmissible unless compliance with those requirements had been waived by consent of counsel.

There was no agreement in writing and the counsel disagree in their statement of the facts.

Plaintiff's counsel states that when he received a verbal notice from defendant's counsel that he wanted to take Edwards' testimony he sent back the message that "he did not desire to be present at the taking of the testimony, that he reserved all legal objections and reserved the right to cross-examine the witness." This was certainly not a waiver of any requirements of the statute. Defendant's counsel gives a different statement.

This court declines to decide such delicate differences, and requires that "all agreements of counsel, on which the court is to act, must be in writing." Rule XI, Sec. 3.

The testimony, therefore, stands as not taken according to the statute and without any waiver. Although the particular objection

on which the court acted may not have been sound, the testimony was objected to and was not legally admissible.

The testimony was not brought up with the bill, and we know nothing of its nature or importance. We can not remand the case on this ground.

The damages allowed by the jury are excessive.

In the case of Thayer vs. Littlejohn above referred to, the damages allowed, in absence of proof of direct pecuniary injury, were $300. We think that $200 additional will cover the actual pecuniary loss of this plaintiff.

It is, therefore, adjudged and decreed that the verdict and judgment appealed from be amended by reducing the amount thereof to $500, and that as thus amended the same be now affirmed, appellee to pay costs of appeal.